UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
VINCENT RIEDEL, on behalf of himself and those similarly situated

Plaintiff,

-against-

ZAPMOTO CORP., and KRISHNA MOTORS LLC d/b/a SAYVILLE FORD

Defendant.
---------------------------------------------------------------------X

Case No.:

**VERIFIED COMPLAINT**

Jury Trial Demanded

Plaintiff VINCENT RIEDEL (hereinafter, "PLAINTIFF" or "RIEDEL"), individually on behalf of himself and all others similarly situated, by and through his undersigned attorneys, PERVEZ & REHMAN, P.C. files this Complaint against Defendant ZAPMOTO ("ZAPMOTO" or "DEFENDANT") and Defendant KRISHNA MOTORS LLC d/b/a SAYVILLE FORD ("FORD" or "DEFENDANT"), collectively "DEFENDANTS," stating as follows:

## INTRODUCTION

1. This is a civil action for claims of unlawful employment practices and to provide appropriate relief to PLAINTIFF, who was adversely affected by these actions.
2. This is an action seeking declaratory, injunctive and equitable relief, as well as monetary damages, to redress DEFENDANTS' violations of the Fair Labor Standards Act, as amended by 29 U.S.C. §§ 201 *et seq*. (hereinafter "FLSA"); PLAINTIFF is entitled to recover from DEFENDANTS for: (a) unpaid wages, (b) unpaid minimum wage, (c) unpaid overtime compensation, (d) liquidated damages, (e) prejudgment and

post-judgment interest, (f) attorney's fees and costs.

3. PLAINTIFF further alleges that, pursuant to the New York Labor Law (hereinafter "NYLL"), he is entitled to recover from DEFENDANTS for: (a) unpaid minimum wage, (b) unpaid overtime compensation, (c) failure to provide wage notices, (d) failure to provide accurate wage statements, (e) failure to provide timely wages, (f) failure to provide spread of hours pay, (g) liquidated damages, (h) prejudgment and post-judgment interest, and (i) attorneys' fees and costs.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action as it is a trial court of unlimited original jurisdiction for the State of New York.

5. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§ 1331, 1337, and 1343.

6. This Court has personal jurisdiction over DEFENDANTS because the failure to pay took place in the State of New York.

7. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §1391 because the conduct that serves as the basis of the complaint took place in this judicial district.

## PARTIES

### *Plaintiff*

8. At all times relevant to this action, PLAINTIFF RIEDEL was a resident of Suffolk County, New York. Currently, PLAINTIFF RIEDEL lives in Suffolk County.

9. At all relevant times, PLAINTIFF RIEDEL met the definition of an "employee" under FLSA and NYLL , and other relevant laws.

10. PLAINTIFF RIEDEL is a former employee of DEFENDANTS.

11. PLAINTIFF RIEDEL was employed by DEFENDANTS from July 9, 2025 until his employment was terminated on April 22, 2026.

***Defendants***

12. DEFENDANT FORD is a business entity authorized to do business in the State of New York.
13. DEFENDANT FORD operates as a Ford Dealership in Sayville, New York.
14. DEFENDANT ZAPMOTO is a business entity authorized to do business in the State of New York.
15. DEFENDANT ZAPMOTO is a business that provides a technology platform for car dealerships to offer contactless vehicle service to customers.
16. Upon information and belief, DEFENDANT FORD and DEFENDANT ZAPMOTO operate as joint employers.
17. Upon information and belief, based on publicly available information about its business model, DEFENDANT ZAPMOTO offers services to dealerships like DEFENDANT FORD by providing scheduling assistance, drivers to help with facilitating test drives, and vehicle pick-and-drop at the dealership.
18. PLAINTIFF and other similarly situated employees wore an employer-branded vest that had the names of both DEFENDANTS.
19. At all relevant times, DEFENDANTS acted as joint employers of PLAINTIFF and other similarly situated employees.

## FACTUAL ALLEGATIONS

***Joint Employment***

20. DEFENDANT ZAPMOTO and DEFENDANT FORD (the "Joint Employers") jointly employed RIEDEL.

21. DEFENDANT ZAPMOTO licenses its services to DEFENDANT FORD.

22. DEFENDANT ZAPMOTO requires dealerships, such as DEFENDANT FORD, to pay recurring service licensing fees to access their platform.

23. DEFENDANT FORD utilizes DEFENDANT ZAPMOTO's services. Upon information and belief, DEFENDANT FORD is required to pay an operational transaction fee per completed transportation trip.

24. DEFENDANTS were employers within the meaning of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

25. At all relevant times, DEFENDANTS Krishna Motors Company and ZAPMOTO (collectively, the "Joint Employers") jointly employed PLAINTIFF.

26. PLAINTIFF and other similarly situated employees used DEFENDANT ZAPMOTO's services to perform vehicle pick up and delivery services for customers servicing their cars at DEFENDANT FORD.

27. DEFENDANTS operated as an integrated enterprise with respect to PLAINTIFF'S and other similarly situated employees' employment, sharing control over hiring, scheduling, supervision, compensation, and working conditions.

28. DEFENDANT FORD provided the physical worksite, customer vehicles, and daily reporting location, while DEFENDANT ZAPMOTO provided the mobile application through which assignments were distributed, tracked, and compensated.

29. DEFENDANTS acted in concert to direct PLAINTIFF's and other similarly situated employees' work.

***Misclassification and Control***

30. DEFENDANTS improperly classified PLAINTIFF and other similarly situated employees as an independent contractor.
31. However, PLAINTIFF was not instructed to complete a W-9 Form until after a motor vehicle accident occurred while returning a customer's vehicle on December 3, 2025 which was requested through a text message from Defendants' Finance Department and Mike from ZAPMOTO.
32. When prompted by PLAINTIFF, the DEFENDANTS revealed they required the form to facilitate the generation of a 1099 for tax purposes.
33. PLAINTIFF was never issued a 1099, even though he signed a 1099 agreement.
34. Despite his classification, PLAINTIFF and other similarly situated employees were subject to substantial control by DEFENDANTS.
35. PLAINTIFF was required to report daily to a designated location of DEFENDANT FORD's business, where he remained under the direction of his ZAPMOTO supervisor, Kenjie Gray.
36. DEFENDANT FORD's secretary, "Jessie", consistently assigned and reassigned PLAINTIFF trips as well as instructing PLAINTIFF on loaner vehicle delivery or operational activity.
37. DEFENDANT FORD's Service Advisors would instruct PLAINTIFF on what jobs to prioritize.
38. For example, DEFENDANT FORD would indicate to PLAINTIFF when a car is ready to be sent via the Zapmoto app.

39. DEFENDANT ZAPMOTO, through its system, also instructed PLAINTIFF and other similarly situated employees on where to go throughout the day, and instructed PLAINTIFF when to report back to the dealership.

40. PLAINTIFF would text his ZAPMOTO supervisor, Kenjie Gray,to schedule his Lyft rides. The Lyft rides were used to drive him to DEFENDANTS' customers to pick up their cars and for him to get back to FORD after returning a car. Mr. Gray would also on occasion monitor PLAINTIFF's activity and call a Lyft in advance.

41. PLAINTIFF's ZAPMOTO supervisor, Mr. Gray, informed PLAINTIFF that drivers cannot make their own schedules and they must adhere to the FORD's schedule.

42. PLAINTIFF and other similarly situated employees were required to wear a uniform vest labeled "Ford/Zapmoto" and submit photographic proof of compliance to ZAPMOTO's automated system.

43. PLAINTIFF and other similarly situated employees were required to follow detailed instructions issued by both DEFENDANTS' supervisors and ZAPMOTO's automated system regarding assignments and performance of work.

44. At all relevant times, DEFENDANTS exercised strict supervision and control over PLAINTIFF and similarly situated drivers.

45. DEFENDANTS required strict adherence to schedules and imposed discipline for tardiness, missed assignments, or failure to follow instructions. Such discipline was communicated through supervisors, including but not limited to individuals acting on behalf of both DEFENDANT ZAPMOTO and DEFENDANT FORD.

46. PLAINTIFF and other similarly situated drivers were required to remain available for assignments throughout the workday, effectively preventing him from engaging in other employment.

47. PLAINTIFF and other similarly situated drivers were required by DEFENDANTS to report to and remain at a designated DEFENDANT FORD location on a daily basis.

48. DEFENDANTS communicated to drivers that failure to adhere to schedules would jeopardize their continued work.

49. At all relevant times, the degree of control exercised by DEFENDANTS was consistent with an employer-employee relationship.

***Overtime and Unpaid Wages***

50. PLAINTIFF was required to work Monday through Friday, beginning between approximately 6:30 a.m. and 7:00 a.m., and frequently continuing until approximately 6:30 p.m., with some days extending as late as 10:00 p.m.

51. PLAINTIFF and similarly situated employees were required to be "on call", at the dealership, waiting for an assignment.

52. PLAINTIFF and similarly situated employees worked approximately twelve (12) hours per day and approximately sixty (60) hours per week.

53. PLAINTIFF and similarly situated employees were not able to take uninterrupted breaks throughout the work day.

54. PLAINTIFF and similarly situated employees were exclusively compensated on a per-trip basis, typically ranging from approximately $8 to $20 per trip, with occasional bonus payments tied to completing thirteen (13) or more trips.

55. Throughout his employment PLAINTIFF did not receive any wage notices or wage statements.

56. PLAINTIFF's and other similarly situated employees' compensation per trip varied, with no indication as to what factors determined this variation.

57. PLAINTIFF's and similarly situated employees' compensation was tracked in an application specific to ZAPMOTO, in which he was able to withdraw pay at any time.

58. PLAINTIFF typically withdrew his pay everyday or every other day.

59. PLAINTIFF spent approximately five (5) to twenty (20) minutes waiting for a Lyft, multiple times a day.

60. PLAINTIFF and similarly situated employees were not compensated for the time spent waiting for Lyft transportation, despite this being required in order to complete his job duties.

61. At all relevant times, PLAINTIFF and similarly situated employees did not receive overtime compensation for hours worked in excess of forty (40) per week.

***Recordkeeping Violations***

62. DEFENDANTS maintained trip and payment records exclusively through the Zapmoto mobile application.

63. At all relevant times, such records were incomplete, inaccurate, and unreliable; there are missing records of PLAINTIFF's work for the entire month of August 2025 and some dates in October 2025.

64. PLAINTIFF began driving for ZAPMOTO on July 9, 2025, yet the earliest records the application maintains are from July 28, 2025.

65. At all relevant times, numerous trips performed by PLAINTIFF were missing or inaccessible within the application.

66. Entire workdays and workweeks were absent from DEFENDANTS' records available to PLAINTIFF.

67. At all relevant times, certain entries reflected payment amounts that heavily exceeded the compensation actually received by PLAINTIFF.

68. In the month of November 2025, the DEFENDANTS entered an amount of $4,100, while the PLAINTIFF earned only $3,783.

69. DEFENDANTS attributed discrepancies to allocations involving third parties, which did not correspond to actual payments made.

70. Due to these deficiencies, PLAINTIFF and similarly situated employees were unable to accurately track hours worked or wages earned.

***Bonus Compensation Issues***

71. PLAINTIFF and similarly situated employees were entitled to a $50 bonus upon completion of thirteen (13) trips from DEFENDANTS.

72. DEFENDANT ZAPMOTO's mobile application failed to accurately track trip completion toward this bonus threshold.

73. The application failed to automatically issue earned bonus payments and DEFENDANTS did not pay PLAINTIFF and similarly situated employees bonus payments.

74. PLAINTIFF was required to request manual processing of bonuses from supervisors.

75. These failures resulted in delayed, reduced, or unpaid bonus compensation.

***Improper Deductions and Expenses***

76. DEFENDANTS imposed practices resulting in improper deductions from PLAINTIFF's and similarly situated employees' wages.

77. Throughout his employment, PLAINTIFF was not provided with any tips acquired through the Zapmoto application.

78. In the beginning of his employment, PLAINTIFF incurred out-of-pocket expenses because of the required duty to use his personal vehicle for transportation as well as the required use of his personal cell-phone in order to complete his assignments.

79. PLAINTIFF was required to arrange transportation to customer's houses and for returns that included Lyft rides, by contacting his Supervisor Kenji.

80. At all relevant times, such expenses were not reimbursed.

81. Certain trip payments were unrecorded and required manual entry by his supervisor, Mr. Kenji.

82. These practices resulted in reduced and inconsistent compensation.

***Workplace Injury***

83. PLAINTIFF and similarly situated employees were required to operate customer vehicles as part of his job duties.

84. On or about December 3, 2025, PLAINTIFF was involved in a motor vehicle accident while returning a customer's vehicle.

85. PLAINTIFF sustained injuries and received workers' compensation benefits, and his Worker's Compensation insurance was paid by DEFENDANT FORD.

86. Following the incident, DEFENDANT FORD maintained insurance coverage for PLAINTIFF.

On or about December 3, 2025, PLAINTIFF ceased working due to injuries sustained in the accident.

***NYLL §§ 195(1) and NYLL §§ 195(3) Claims – Failure to Provide Wage Notices and Wage Statements.***

87. PLAINTIFF also brings claims for failure to provide accurate wage notices and wage statements pursuant to NYLL §§ 195 et seq. and the supporting regulations.
88. DEFENDANTS failed to provide PLAINTIFF with accurate wage notices stating the actual number of hours worked by PLAINTIFF, in an attempt to disguise PLAINTIFF'S rate of pay, how he was being compensated, whether he was entitled to an overtime rate, whether he was formally classified as exempt from overtime, and also the corporate entity responsible for paying wages, especially as DEFENDANTS changed identity and form.
89. Failing to provide PLAINTIFF with a document that classified him as an hourly or salaried employee, and identifying how PLAINTIFF was to be paid (hourly or salary, exempt or non-exempt) prevented PLAINTIFF from realizing he was underpaid and was improperly classified, his proper employer and deprived PLAINTIFF of information that directly led to the underpayment of wages, as it prevented PLAINTIFF from raising the issue directly with his employer, and also directly delayed payment of PLAINTIFF'S wages longer than if DEFENDANTS would have provided the information which would have allowed PLAINTIFF to raise his underpayment to his employer earlier.
90. Had DEFENDANTS provided PLAINTIFF with this information, PLAINTIFF would have understood how he was being classified, how he was being paid, and been able to identify discrepancies between the number of hours worked and the pay he received. Not

only was PLAINTIFF not paid what he was owed, but he was denied the information needed to advocate for proper pay, resulting in a concrete injury beyond a statutory violation.

91. Failing to provide the proper legal name of the employer on the wage notices, as required by NYLL §195, delayed PLAINTIFF ability to recover unpaid wages through legal action against DEFENDANTS.

92. Upon information and belief, failure to provide wage notices was designed to disguise and avoid paying PLAINTIFF wages and overtime for all hours worked which directly resulted in a delay in compensation and underpayment. Had DEFENDANTS provided the information required by the law, in the wage notices, PLAINTIFF would have been able to prevent or shorten the period of underpayment. Thus, the failure to provide the required information under the law approximately resulted in a concrete injury– the monetary harm of the underpayment. The proximity caused the delay in payment which deprived PLAINTIFF with the time-value of their compensation (value of money today v. value of money tomorrow) which is a separate and concrete monetary injury distinct from the failure to provide the information itself.

93. DEFENDANTS failure to provide accurate wage statements which failed to identify the accurate number of hours PLAINTIFF worked per week, his hourly rate and his overtime rate, the proper identity of the employer, or the basis for his pay, denied PLAINTIFF his statutory right to receive true and complete information about the nature of his employment. This includes but is not limited to, DEFENDANTS compensation policies for PLAINTIFF and those in the same position as PLAINTIFF and whether they were

being properly classified, which directly resulted in delay of compensation and the underpayment of wages.

94. DEFENDANTS' failure to provide accurate wage statements denied PLAINTIFF the right to be adequately apprised of the compensation policies DEFENDANT applied to PLAINTIFF, and upon information and belief continued DEFENDANTS' efforts to disguise and prevent PLAINTIFF from realizing the true nature of their compensation, and prevented them from raising underpayment and improper classification and advocating directly to their employer, thereby proximately resulting in underpayment and the delay of providing proper compensation and depriving PLAINTIFF with the time-value of their compensation (value of money today v. value of money tomorrow) which is a separate and concrete monetary injury distinct from the failure to provide the information itself.

95. DEFENDANTS failed to apprise PLAINTIFF of the required information needed to evaluate and stop the wage theft experienced by PLAINTIFF which is precisely the downstream harm these statutes seek to prevent.

96. As a proximate result of the failure to provide the wage notices and wage statements, PLAINTIFF suffered concrete, non-hypothetical harm described above, that is fairly traceable to failure to provide the wage notices and statements, including but not limited to the delayed compensation and accordant deprivation of the time-value of money, which rendered PLAINTIFF unable to use his wages to invest, save, and purchase in a manner that he would have, if he would have received the information earlier and been able to raise the issue with his employer and/or recover proper wages earlier as required under the law.

## FLSA COLLECTIVE ACTION ALLEGATIONS

97. PLAINTIFF brings this action individually and as a class representative on behalf of himself and all other current and former drivers who have been or were employed by DEFENDANTS in New York at any time since the filing of this Complaint (and through the entry of judgement in this case (the "Collective Action Period") who worked as drivers or in similar positions (The "Collective Action Members").

98. Upon information and belief, the collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of DEFENDANTS, upon information and belief, there are more than 10 Collective Action Members who worked for DEFENDANTS during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, PLAINTIFF submits that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

99. PLAINTIFF will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of employment law and class action litigation. PLAINTIFF has no interests that are contrary to or in conflict with those members of this collective action.

100. This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be

dispositive of interests of the other members who are not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

101. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.

102. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

103. Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because DEFENDANTS have acted on grounds generally applicable to all members. Among the common questions of law and fact common to PLAINTIFF and other Collective Action Members are:

a. Whether ZAPMOTO and KRISHNA MOTORS LLC jointly employed PLAINTIFF and the Collective Action Members within the meaning of the FLSA;

b. Whether ZAPMOTO and KRISHMA MOTORS LLC failed to keep true and accurate records of jobs completed and hours worked by PLAINTIFF and the Collective Action Members;

c. What proof of hours worked is sufficient where the employer fails in its duty to maintain records;

d. Whether ZapMoto and Krishna Motors LLC unlawfully failed to pay PLAINTIFF and the Collective Action Members overtime compensation at the statutory rate of time and one-half for all hours worked in excess of forty (40) per week in violation of the FLSA;

e. Whether ZapMoto and Krishna Motors LLC misclassified PLAINTIFF and the Collective Action Members as exempt under the FLSA;

f. Whether ZapMoto and Krishna Motors LLC's violations of the FLSA are defined as willful within the context of the FLSA; and,

g. Whether ZapMoto and Krishna Motors LLC are liable for all damages claimed hereunder, including but not limited to: compensatory, liquidated and statutory damages, interest, attorneys' fees, and costs and disbursements.

104. PLAINTIFF knows of no difficulty that will be encountered in management of this litigation that would preclude its maintenance as a collective action.

105. PLAINTIFF and others similarly situated have been substantially damaged by DEFENDANTS's wrongful conduct.

## FED. R. CIV. P. 23 CLASS ACTION ALLEGATIONS

106. Pursuant to the NYLL, PLAINTIFF bring this action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by DEFENDANTS in New York at any time since the period commencing six years prior to the filing of this action, or longer if tolled by executive order or other matters, and through the entry of judgement in this case (the "Class Period") who worked as drivers or in similar positions (the "Class Members")

107. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of DEFENDANTS. For purposes of notice and other purposes related to this action, their names and addresses are readily available from DEFENDANTS. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

108. The Class Members are so numerous that joinder of all members is impracticable.

109. Upon information and belief, there are in excess of 10 Class Members.

110. The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class. These common questions include, but are not limited to:

a. Whether DEFENDANTS jointly employed PLAINTIFF and the Class Members within the meaning of the NYLL;

b. Whether DEFENDANTS failed to keep true and accurate records of all completed jobs and hours worked by PLAINTIFF and the Class Members;

c. Whether DEFENDANTS failed and/or refused to pay PLAINTIFF and the Class Members for any hours worked over forty (40) ina given workweek;

d. Whether DEFENDANTS failed and/or refused to pay PLAINTIFF and Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek at a rate equal to one and one half times their regular rate or at a minimum one and one half times New York State's minimum wage;

e. Whether DEFENDANTS failed to provide PLAINTIFF and the Class Members with an accurate statement of wages with every wage payment as required by the NYLL;

f. Whether DEFENDANTS failed to provide proper wage notice to PLAINTIFF and Class Members at the beginning of their employment and/or when their wage rate(s) changes, as required by the NYLL;

g. Whether DEFENDANTS' failure to properly pay PLAINTIFF and the Class Members lacked a good faith basis; and,

h. Whether DEFENDANTS are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs, and disbursements and attorneys' fees.

111. PLAINTIFF's claims are typical of the Class Members' claims. PLAINTIFF, like all Class Members, is a driver who worked for DEFENDANTS pursuant to their corporate policies. PLAINTIFF, like all Class Members, were, inter alia, not paid overtime wages at one and one half times minimum wage for all hours worked over forty (40) in a given workweek and did not receive proper wage statements and wage notices.

112. If DEFENDANT is liable to PLAINTIFF for the misclassification claims enumerated on this Complaint, they are also liable to all Class Members for damages accrued from misclassification.

113. PLAINTIFF and their Counsel will fairly and adequately represent the Class. There are no conflicts between PLAINTIFF and the Class Members, and PLAINTIFF brings this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

114. PLAINTIFF's counsel are experienced and are well-prepared to represent the interests of the Class Members.

115. A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

116. DEFENDANT is a sophisticated party with substantial resources. The individual PLAINTIFF lack the financial resources to vigorously prosecute a lawsuit in federal court against DEFENDANT.

117. The individual members of the Class have no interest or capacity to bring separate actions; PLAINTIFF is unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

**FIRST CAUSE OF ACTION**

**(Fair Labor Standards Act: Unpaid Overtime)**

118. PLAINTIFF on behalf of himself and the Class Members repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

119. DEFENDANTS willfully violated PLAINTIFF's and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) each week, in violation of the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

120. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

121. At all relevant times, DEFENDANTS are, and continue to be, an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) have and have had employees

engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) have and have had an annual gross volume of sales of not less than five hundred thousand dollars ($500,000.00).

122. DEFENDANTS willfully, regularly, and repeatedly failed to pay overtime compensation, which caused PLAINTIFF and the Class Members to suffer loss of wages and interest thereon. PLAINTIFF and the Class Members are entitled to recover from DEFENDANTS unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

123. As a result of DEFENDANTS' willful and unlawful conduct, PLAINTIFF and the Class Members are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre and post-judgment interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION

## (Fair Labor Standards Act: Unpaid Minimum Wages)

1. PLAINTIFF on behalf of himself and the Class Members repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

2. By failing to pay PLAINTIFF and the Class Members minimum wage for hours worked, DEFENDANTS have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

3. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

4. DEFENDANTS' failure to pay minimum wages for hours caused PLAINTIFF and the Class Members to suffer loss of wages and interest thereon.

5. Therefore, PLAINTIFF and the Class Members are entitled to recover from DEFENDANTS their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

DEFENDANTS willfully, regularly, and repeatedly failed to pay PLAINTIFF at the required under the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

**THIRD CAUSE OF ACTION**

**(New York Labor Law: Unpaid Overtime)**

124. PLAINTIFF on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

125. DEFENDANTS willfully violated PLAINTIFF's and Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) each week, in violation of the NYLL and regulations promulgated thereunder.

126. DEFENDANTS willfully, regularly, and repeatedly failed to pay overtime premium compensation, causing PLAINTIFF and Class Members to suffer loss of wages and interest thereon. PLAINTIFF and Class Members are entitled to recover from DEFENDANTS unpaid overtime compensation, damages for unreasonably delayed

payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to the NYLL.

127. As a result of DEFENDANTS' willful and unlawful conduct, PLAINTIFF and Class Members are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre and post-judgment interest, and attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**

**(New York Labor Law: Unpaid Minimum Wages)**

1. PLAINTIFF on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.
2. DEFENDANTS formerly employed PLAINTIFF and those similarly situated.
3. DEFENDANTS have failed to pay PLAINTIFF for hours worked.
4. DEFENDANTS willfully, regularly, and repeatedly violated PLAINTIFF's those similarly situated's rights by failing to compensate them for hours worked, in violation of the New York Labor Law and regulations promulgated thereunder.
5. DEFENDANTS' failure to pay minimum wage for all hours worked caused PLAINTIFF those similarly situated to suffer loss of wages and interest thereon.
6. PLAINTIFF those similarly situated are entitled to recover from DEFENDANTS his unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

7. As a result of DEFENDANTS' willful and unlawful conduct, PLAINTIFF is entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre and post judgment interest and attorneys fees and costs.

**FIFTH CAUSE OF ACTION**

**(New York Labor Law: Failure to Provide Accurate Wage Statements)**

128. PLAINTIFF on behalf of himself and the Class Members repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

129. DEFENDANTS have willfully failed to supply PLAINTIFF and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

130. Due to DEFENDANTS' violations of the NYLL, PLAINTIFF and Class Members are entitled to recover from DEFENDANTS two hundred and fifty dollars ($250.00) for each day that the violations occurred or continued to occur, or a total of five thousand dollars ($5,000.00), as provided for by NYLL, Article 6, §§ 190 *et seq.*, in addition to reasonable attorneys' fees, costs, and injunctive and declaratory relief.

**SIXTH CAUSE OF ACTION**

**(New York Labor Law: Failure to Provide Wage Notices)**

131. PLAINTIFF, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as through fully set forth herein.

132. DEFENDANTS have willfully failed to supply PLAINTIFF and the Class Members notice as required by Article 6, § 195(1), in English or in the language identified by PLAINTIFF and the Class Members as their primary language, containing PLAINTIFF and Class Members' rate or rates of pay and basis thereof, whether to be paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable; the regular pay day designated by the employed in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer, the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

133. As set forth above, as a proximate result of DEFENDANTS' failure to provide wage notices, PLAINTIFF, and those similarly situated, suffered concrete, distinct, non-hypothetical harm fairly traceable to the failure to provide the wage notices, including but not limited to delayed compensation and the accordant loss of the time-value of money, which are concrete monetary harms, and the inability to realize the terms of the employment, and raise and advocate directly with the employer, which are all injuries separate and distinct from the failure to provide the information itself.

134. Due to DEFENDANTS' violations of the NYLL, PLAINTIFF and the Class Members are entitled to recover from DEFENDANTS fifty dollars ($50) per employee

for each workday that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190, et seq., reasonable attorneys' fees, costs, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

**WHEREFORE**, upon all of the facts, allegations, and causes of action as set forth and alleged herein, PLAINTIFF respectfully requests that this Court:

A. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

B. An award of compensatory damages as a result of DEFENDANTS' failure to pay overtime compensation and minimum wage violations pursuant to the FLSA and the NYLL and supporting regulations

C. An award of liquidated and/or punitive damages as a result of DEFENDANT'S willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulation.

D. An award of fifty dollars ($50.00) for each work day that the violations of NYLL, Article 6 § 195(1) occurred or continued to occur, up to a maximum of five thousand ($5,000.00) as provided for by NYLL, Article 6 198(1)-b;

E. An award of two hundred and fifty dollars ($250.00) for each day that the violations of NYLL, Article 6 § 195(3) occurred or continued to occur, up to a maximum of five thousand dollars ($5,000.00) as provided for by NYLL, Article 6 § 198(1)-d;

F. An award of prejudgment and post-judgment interest;

G. An award of costs and expenses of this action, together with reasonable attorneys' and expert fees; and

H. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: Commack, New York
October 19, 2026

Respectfully Submitted,

**Pervez & Rehman, P.C.**
*Attorneys for Plaintiffs*

___/s/ Aneeba Rehman__________
By: Aneeba Rehman, Esq.
Nadia M. Pervez, Esq.
6268 Jericho Turnpike, Suite 8,
Commack, NY 11725

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
VINCENT RIEDEL, on behalf of himself
And all others similarly situated,

Plaintiff,

Index. No.:

**VERIFIED COMPLAINT BY VINCENT RIEDEL**

-against-

ZAPMOTO and KRISHNA MOTORS LLC d/b/a
SAYVILLE FORD

Defendants.
----------------------------------------------------------------------X

STATE OF NEW YORK )
ss.:
COUNTY OF SUFFOLK )

I, VINCENT RIEDEL, am the PLAINTIFF in the above action. I have read the foregoing Complaint and know the contents thereof. The contents are true to my own knowledge except as to matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

VINCENT RIEDEL

Sworn to before me on this 22nd day of October, 2026, 2026.

Notary Public

**Michael Alfred Tortorella**
**Notary Public, State of New York**
**No. 01TO0054725**
**Qualified In Suffolk County**
**Commission Expires September 17, 2030**